IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PHIL HUDGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-664-M |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Defendant Commissioner issued a final decision denying Phil Hudgins' (Plaintiff) applications for disability insurance benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). Chief United States District Judge Vicki Miles-LaGrange referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the Court affirm the Commissioner's decision.

**I.     Administrative proceedings.**

In his applications for benefits, Plaintiff alleged that his impairments became disabling in September 2006. AR 238-45. The Social Security

Administration (SSA) denied Plaintiff's claims, and at his request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 85-133. In her January 2009 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 147-48. Plaintiff sought administrative review, and the SSA Appeals Council remanded the decision for further consideration. *Id.* at 150-51. The same ALJ then conducted a second hearing, and in September 2012 issued a second decision concluding that Plaintiff is not disabled. *Id.* at 24; 31-84. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-7, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ will conduct a

residual functional capacity (RFC)[2] assessment at step four to determine what, if anything, Plaintiff can still do despite his impairments. *See* 20 C.F.R. §§ 404.1545(e), 416.912(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff makes a prima facie showing that he cannot engage in prior work activity, the burden shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## III. Plaintiff's claims.

According to Plaintiff, the ALJ's decision must be reversed for five reasons. First, Plaintiff alleges that the state agency physicians' opinions cannot constitute substantial evidence because they are stale and lack sufficient detail. Doc. 11, at 5-8. Second, he alleges that the ALJ "cherry-pick[ed]" one treating physician's opinion and failed to evaluate a second treating physician's opinion. *Id.* at 8-12. Third, Plaintiff complains that the ALJ's pain assessment is simply "boilerplate." *Id.* at 13. Fourth, Plaintiff alleges that the RFC assessment does not reflect all of his impairments. *Id.* at 12-13. And, fifth, he contends the ALJ failed to ask the vocational expert

---

[2]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(VE) "a question specifically and accurately relating all of [Plaintiff's] impairments." *Id.* at 13.

The undersigned finds no reversible error.

## IV. Analysis.

### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). The Court may affirm the Commissioner's decision, despite the ALJ's error, "where, based on the material the ALJ did at least consider (just not properly), we [can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The Court will consider waived all "unspecific, undeveloped, and unsupported" arguments. *Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013).

### B. The ALJ's findings.

The ALJ found that Plaintiff: (1) met the insured status requirements through December 31, 2011; (2) has not engaged in substantial gainful activity since September 2006; and, (3) has severe: "Back, both hands, right

4

ankle, heart problems, obesity, and depression."[3] AR 14. The ALJ then found that Plaintiff: (1) has the RFC to perform sedentary work with some exertional and nonexertional limitations, and (2) can perform other jobs existing in significant numbers in the national economy. *Id.* at 20, 23-24.

C.  Analysis.

   1.  **The ALJ's reliance on the state agency physicians' opinions.**

Plaintiff first alleges that the ALJ impermissibly relied on the state agency physicians' opinions because the opinions are unsupported and stale. Doc. 11, at 5-8. The undersigned disagrees.

   a.  **The alleged lack of supporting evidence.**

When evaluating medical opinions, an ALJ must consider the extent to which the medical source provides "relevant evidence to support" his or her opinion. *See McDonald v. Astrue*, 492 F. App'x 875, 882 (10th Cir. 2013). This is particularly true for nonexamining sources. *Id.* Here, the record reflects that both nonexamining state agency physicians supported their assessment.

For example, Dr. Thurma Fiegel reviewed Plaintiff's medical records in February 2007. AR 410. Dr. Fiegel assessed Plaintiff's RFC and opined:

> Clt is SP MVA with injury to right leg and foot and cervical spine. Has fracture including the right talus. Has hardware in

---

[3]  Unless otherwise indicated, all quotations are reprinted verbatim.

place and some evidence of avascular necrosis. Has recovery of neurological deficit from the cord injury. Should have this RFC at one year from onset.

*Id.* at 404.

In May 2007, Dr. Mary Rees confirmed Dr. Fiegel's assessment, opining:

Additional records indicate the claimant is walking slowly without assistance and his grip has improved to 3/5, he is still weak but has not plateaued as far as his improvement. An ankle film notes the hardware is stable and there is no collapse of the joint.

*Id.* at 825.

Clearly, both nonexamining physicians supported their opinions with medical evidence and the undersigned finds no grounds for reversal.

### b. Alleged staleness.

The undersigned agrees that Drs. Fiegel and Rees issued their opinions based on evidence existing in 2007, and that Plaintiff's medical records continue until 2010. Reliance on a "patently stale opinion" can be "troubling." *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012). However, Dr. Fiegel opined that Plaintiff could perform sedentary work, AR 403-10, and the ALJ reached the same conclusion after considering *all* the medical evidence. *Id.* at 14-22. And, while Plaintiff lists a litany of symptoms he allegedly endured after 2007, he fails to actually establish that any post-2007 evidence is inconsistent with an RFC for sedentary work with exertional and

6

nonexertional limitations. *See* Doc. 11, at 7. So, the undersigned finds no reversible error in the ALJ's reliance on Drs. Fiegel and Rees' opinions. *See Pool v. Astrue*, No. CIV-11-338-M, 2012 WL 1893632, at *9 (W.D. Okla. May 3, 2012) (unpublished recommendation) (rejecting plaintiff's claim that the ALJ erred in relying on "stale" state agency physician opinions that plaintiff could perform light work, where plaintiff failed to establish that any of the post-opinion evidence conflicted with those assessments or "expressly bears on the ability to perform light work"), *adopted*, 2012 WL 1893649 (W.D. Okla. May 23, 2012) (unpublished order).

### 2. The ALJ's alleged errors in assessing two treating physicians' opinions.

Plaintiff alleges that the ALJ erred in assessing two treating physicians' opinions. That is, Plaintiff claims that the ALJ "cherry-pick[ed]" Dr. Scott de la Garza's notes, Doc. 11, at 8-10, and failed to properly assess Dr. Donald Kim's opinion. *Id.* at 10-12. The undersigned finds no error in the first allegation, and harmless error in the second.

#### a. The ALJ's discussion of Dr. Garza's findings.

It is well established that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability[.]" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.

7

2007). Plaintiff alleges that the ALJ did just that with Dr. Garza's opinion, and gives five examples. Doc. 11, at 8-9. Those include the physician's:

- residual functional capacity assessment (dated May 21, 2007);

- notation of Plaintiff's talus "avascular necrosis" and cord signal change, and opinion that Plaintiff would be at risk for posttraumatic arthrosis and ankle collapse (dated June 18, 2007);

- finding that Plaintiff had been diagnosed with a blood clot, showed slow improvement in upper strength "but was by no means normal," and had a "positive Hoffman's sign" (dated September 13, 2007);

- opinion that Plaintiff was "temporarily totally disabled" and continued to have a "positive Hoffman's sign" (dated March 6, 2008); and

- notation that Plaintiff has "central cord syndrome" with continuing daily pain and lacked "full function of his upper extremities" (dated May 22, 2008).

*Id.*

The flaw in Plaintiff's argument is that the ALJ considered *all of this* evidence. AR 16-17 (acknowledging Dr. Garza's opinion that Plaintiff is "a prime candidate for disability" and discussing the physician's treatment notes involving Plaintiff's: (1) RFC assessment; (2) continued treatment for right ankle and talus; (3) finding of a blood clot; (4) positive Hoffman's sign, (5) cord signal change; (6) continued daily ankle pain; and (7) lack of full function of upper extremities). So, the undersigned finds no merit in Plaintiff's suggestion that the ALJ cherry-picked Dr. Garza's notes.

### b. The ALJ's discussion of Dr. Kim's records.

Regarding Dr. Kim, Plaintiff alleges that the ALJ failed to actually assess the physician's opinion, which was the "equivalent to rejecting the treating physician's records and treatment notes." Doc. 11, at 11. And, Plaintiff claims, if the ALJ rejected Dr. Kim's opinion, she failed to give the required specific and legitimate reasons for doing so. *Id.* at 10-12. The undersigned agrees that the ALJ failed to assign any weight to Dr. Kim's opinion, and thus implicitly rejected the physician's assessment, and failed to give specific legitimate reasons for that rejection. However, the undersigned can confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter in any other way. Thus, the ALJ's error is harmless.

### i. The treating physician rule.

"According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under that rule, the ALJ must first determine whether the treating physician's opinion is to be accorded "controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The opinion is entitled to "controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques

9

and not inconsistent with other substantial evidence in the record." *Id.* (citation omitted). If the ALJ finds that the opinion is not entitled to "controlling weight," she must then "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons . . . for the weight assigned." *Id.* If the ALJ ultimately rejects the treating physician's opinion, she must provide specific and legitimate reasons for doing so. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

### ii. The ALJ's legal error.

The ALJ discussed Dr. Kim's treatment notes and RFC assessment. AR 17. Dr. Kim opined in relevant part that Plaintiff: (1) cannot carry any weight; (2) cannot walk or stand for any length of time; and (3) can only sit for one hour in an eight-hour workday. *Id.* at 17, 1078-81. The ALJ did not adopt this RFC assessment – thus implicitly rejecting it – and did not provide specific and legitimate reasons for her rejection of it. *Id.* at 22. Because Dr. Kim's RFC assessment was inconsistent with other substantial medical evidence, the undersigned finds that the ALJ's failure to articulate this fact is harmless error. For chronological reasons, the undersigned first examines the other substantial medical evidence of record.

### (a) The substantial medical evidence of record.

Plaintiff was involved in a car accident in early September 2006, resulting in a "severe right lower . . . talus injury" and spinal cord injury. *Id.* at 350. He had immediate surgery on his right ankle, and on September 23, 2006, Plaintiff was transferred to an inpatient rehabilitation center. *Id.* at 348, 505. Plaintiff was sent home on November 8, 2006, and was advised that he could "use a wheelchair independently," should "wear a walker boot on the right lower extremity," and should "be nonweightbearing on the right lower extremity." *Id.* at 534. Two days later, Plaintiff began outpatient physical therapy. *Id.* at 572.

On March 16, 2007, Dr. Richard Kirkpatrick examined Plaintiff's right ankle and noted that Plaintiff "walked in the clinic today and not in his wheelchair." *Id.* at 413. Dr. Kirkpatrick noted that Plaintiff continued to have "some ankle pain, but he thinks it is a little better." *Id.* Plaintiff had "some minimal pain with range of motion of his ankle, but [was] otherwise doing well" and was "tolerating the weightbearing okay." *Id.*

Ten days later, Dr. Garza examined Plaintiff and noted that he was "walking without assistance[,] but does so very slowly." *Id.* at 784. Dr. Garza noted that Plaintiff's grip strength showed a "marked improvement" at 3/5

11

but found "significant weakness globally." *Id.* Dr. Garza opined that Plaintiff's improvement had not plateaued. *Id.*

On March 29, 2007, Plaintiff was discharged from outpatient physical therapy. *Id.* at 574. His physical therapist indicated that Plaintiff had met all the relevant objective goals, including: (1) independent with home exercise; (2) pain level 2/10 or less with activities of daily living; (3) using a walker independently; and (4) "ambulating without an assistive device." *Id.* The therapist noted that Plaintiff had made "excellent" and "fantastic progress." *Id.*

Dr. Kirkpatrick next saw Plaintiff in August 2007, nine months after Plaintiff's car accident. *Id.* at 856. Dr. Kirkpatrick found that Plaintiff's ankle range of motion was limited but "relatively pain free" and opined that Plaintiff should continue to "weightbear as tolerated." *Id.* In September 2007, Dr. Garza found that Plaintiff was "by no means normal," but "continues to show steady improvement with his strength in his upper extremities." *Id.* at 858. Dr. Garza also noted that Plaintiff was taking Coumadin for a blood clot, still had a positive Hoffman's sign, and "still shows cord signal change." *Id.* In December 2007, Plaintiff had surgery to remove the hardware placed in his right ankle. *Id.* at 841.

When Plaintiff complained of increased pain in February 2008, Dr. Kirkpatrick opined that he would likely need "a hindfoot fusion." *Id.* at 860.

At that time, Plaintiff was "only ambulating in his camwalker boot partial weightbearing" and had significant pain with range of motion. *Id.* In March 2008, Dr. Garza expressed his concern for Plaintiff and noted in part that Plaintiff's cervical injury had "likely . . . plateaued." *Id.* at 891. However, Dr. Garza found that Plaintiff could "perform all tasks asked of him here in clinic" and that while he was "weak bilaterally," Plaintiff's "strength has continued to improve." *Id.* at 891.

In May 2008, Plaintiff was diagnosed with degenerative disc disease, *id.* at 882, and underwent two cervical steroid injections in June 2008. *Id.* at 884, 886. In July 2008, Plaintiff reported that the injections had given him some relief in his neck and shoulders but "rest of the body not better." *Id.* at 1180.

One year later – in July 2009 − Plaintiff underwent a "hindfoot nailing for arthritis of the [right] ankle." *Id.* at 1165. In a follow up appointment in February 2008, Plaintiff complained of pain when walking, but presented with "a solid fusion," "good mid foot and forefoot [range of] motion," and "4/5 strength in both legs." *Id.* at 1157.

In August 2010, Dr. Kirkpatrick examined Plaintiff but noted "no new issues." *Id.* at 1147. Plaintiff's ankle was "stable on exam" and Dr. Kirkpatrick noted that Plaintiff was in "pain management." *Id.* In

13

November 2010, Plaintiff presented with pain after his son stepped on his foot, and indicated that "he was out of the boot until this injury." *Id.* at 1145.

### (b) Dr. Kim's records.

Dr. Kim acted as Plaintiff's pain management physician. The majority of his treatment notes consists of check marks and circles on a "Review of System" and do not provide significant details regarding examination. *Id.* at 1114-43. A few progress notes exist, and from those it appears that Dr. Kim first examined Plaintiff in October 2008. *Id.* at 1133, 1092. At that time Plaintiff presented in a wheelchair. *Id.* at 1092. Dr. Kim reviewed a June 2007 MRI and gave the impression of "cervical and lumbar spondylosis with myelopathy and radiculapthy complicated by failed right ankle fusion and right shoulder pain with muscle wasting of the upper extremities." *Id.* at 1094. Dr. Kim began a pain management protocol. *Id.*

In January 2009, Dr. Kim assessed Plaintiff's residual function capacity and opined that he (1) cannot to carry any weight; (2) cannot walk or stand for any length of time; and (3) can only sit for one hour in an eight-hour workday. *Id.* at 1079-81. Then in June 2009, Dr. Kim dismissed Plaintiff for marijuana use and obtaining pain medication from other physicians. *Id.* at 1133.

In December 2009, Dr. Kim readmitted Plaintiff for pain management. *Id.* At that time, Plaintiff's primary complaint was "right foot" pain and

"some . . . pain in the right shoulder because of a recent fall." *Id.* Plaintiff also complained of neck, back, and upper extremity pain. *Id.* Dr. Kim noted that Plaintiff had "major gait disturbance and station discomfort." *Id.* at 1134. The physician opined that Plaintiff was at "high risk for misuse or abuse of pain medication," but nevertheless began Plaintiff on a pain management protocol. *Id.* at 1135.

### iii. The harmlessness of the ALJ's error.

Reviewing the substantial evidence of record, the undersigned finds no evidence to support Dr. Kim's assessment that Plaintiff cannot carry any weight, cannot walk or stand for any length of time, and can only sit for one hour in an eight-hour workday. The SSA Appeals Council reached the same conclusion, finding that Plaintiff's "longitudinal record and . . . treatment record" "[do] not support the extreme assessment of Dr. Kim or a [RFC] that is more restrictive than the [RFC] assessment of the [ALJ]." *Id.* at 2.[4] So, the undersigned finds that while the ALJ committed legal error in failing to articulate her reason for implicitly rejecting Dr. Kim's opinion, no reasonable factfinder could have resolved the matter in any other way. *Id.* at 2-3; *see Marshall v. Astrue*, 315 F. App'x 757, 760 n.2 (10th Cir. 2009) ("[T]he ALJ's deficiency in articulating his reasoning [for rejecting the treating physician's

---

[4] Although the Appeals Council addressed Plaintiff's argument that the ALJ erred in failing to properly assess Dr. Kim's opinion, it ultimately denied Plaintiff's request for review. AR 1-3.

15

opinion] is harmless in light of the fact that no reasonable factfinder could conclude that Dr. McCollum's opinion was supported by [the other substantial evidence]").

## D. The ALJ's consideration of Plaintiff's pain.

Plaintiff alleges in one sentence that "the ALJ, other than merely listing the *Luna* [*v. Bowen*, 834 F.2d 161 (10th Cir. 1987)] factors she was supposed to use [to] evaluate pain by, does nothing other than list the boilerplate language and that is error." Doc. 11, at 13. The undersigned finds no error.

The ALJ noted that she was required to evaluate whether Plaintiff had shown by objective medical evidence that he suffers from a physical impairment that can reasonably be expected to produce his symptoms and, if so, whether Plaintiff's pain is disabling in the light of the entire record. AR 20; *see also Luna*, 834 F.2d at 163-64. The ALJ had already thoroughly examined all of the medical evidence. AR 14-18. She then summarized Plaintiff's testimony relating to his subjective complaints, and determined that his complaints regarding the extent of his symptoms were not fully credible. *Id.* at 21-22. Plaintiff does not challenge the credibility finding, and the undersigned finds no error in the ALJ's pain analysis.

16

### E. The ALJ's alleged failure to include all of Plaintiff's impairments in the RFC assessment and hypothetical question to the VE.

In his final two arguments, Plaintiff complains that the ALJ failed to include all of his impairments in the RFC assessment and failed to ask the VE "a question specifically and accurately relating all of [Plaintiff's] impairments." Doc. 11, at 13. The undersigned declines to address these undeveloped arguments.

Plaintiff's two allegations are one sentence each, and he fails to articulate what impairments are missing from the RFC assessment and VE question. *Id.* The undersigned finds that Plaintiff waived these "unspecific, undeveloped, and unsupported" arguments. *Tietjen*, 527 F. App'x at 709.

### IV. Recommendation and notice of right to object

For the reasons discussed above, the undersigned recommends that the Commissioner's decision be affirmed.

The parties are advised of their right to object to this report and recommendation by the 28th day of May, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 8th day of May, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE